In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00123-CR
______________________________


GLADI GUTIERREZ DELACRUZ, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31571-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â Gladis Gutierrez Delacruz appeals from her conviction by a jury for driving while intoxicated
while the vehicle was occupied by a passenger younger than fifteen years of age. The jury assessed
punishment at six months' incarceration in a state jail facility. The trial court declined to place
Delacruz on community supervision. On appeal, Delacruz contends the sentence imposed is
disproportionate to the offense.



Â Â Â Â Â Â Â Â Â Â Â Â We first look to see if the issue has been preserved for review. Delacruz did not object to the
sentence on the ground it was disproportionate to the crime, or on any other ground, at the time it
was imposed. However, the motion for new trial contains a contention that the sentence was
disproportionate to the offense. To preserve a complaint for appellate review, an appellant must
have presented to the trial court a timely request, objection, or motion stating the specific grounds
for the ruling desired. Tex. R. App. P. 33.1(a)(1)(A); Rhoades v. State, 934 S.W.2d 113, 119 (Tex.
Crim. App. 1996). This Court has held that a defendant is required to raise a disproportionality
objection in a timely manner. Hookie v. State, 136 S.W.3d 671, 679 (Tex. App.âTexarkana 2004,
no pet.); Jackson v. State, 989 S.W.2d 842, 845 (Tex. App.âTexarkana 1999, no pet.).


 
Â Â Â Â Â Â Â Â Â Â Â Â Texas courts have traditionally held that, as long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). However, in
Jackson, 989 S.W.2d at 845, we recognized that a prohibition against grossly disproportionate
punishment survives under the Eighth Amendment to the United States Constitution apart from any
consideration of whether the punishment assessed is within the range established by the Legislature. 
See also Fluellen v. State, 71 S.W.3d 870, 873 (Tex. App.âTexarkana 2002, pet. ref'd).
Â Â Â Â Â Â Â Â Â Â Â Â As we set out in Alberto v. State, 100 S.W.3d 528, 530 (Tex. App.âTexarkana 2003, no
pet.), our proportionality analysis is guided by (1) the gravity of the offense and the harshness of the
penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences
imposed for commission of the same crime in other jurisdictions. See Solem v. Helm, 463 U.S. 277,
292 (1983). Only if we find that the sentence is grossly disproportionate to the offense will we then
consider the remaining factors of the Solem test and compare the sentence received to sentences for
similar crimes in the same jurisdiction and to sentences for the same crime in other jurisdictions.
Alberto, 100 S.W.3d at 530.
Â Â Â Â Â Â Â Â Â Â Â Â Here, the sentence imposed is practically, the minimum. We cannot say that the sentence 
is grossly disproportionate to the offense. Further, there is no evidence in the record comparing this
sentence with others in the same jurisdiction for this offense, or those imposed on defendants in
other jurisdictions who committed a similar offense. See id. For all of those reasons,
disproportionate sentencing has not been shown.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment.



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â May 18, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â June 22, 2005

Publish



een a shooting, based on the wound to Landreth and the shotgun shells lying
nearby. Ellis was told that Shipp was the shooter and that Shipp was in a black Ford Ranger pickup
truck with a white female kidnap victim. About 4:30 a.m, Ellis put out an all-points bulletin for
Shipp indicating that he was armed and dangerous. Soon thereafter, Ellis received a report that
Shipp's kidnap victim, Prater, was located at the Athens Police Department, to which Ellis went and
interviewed her. Prater told Ellis that she had been kidnapped and raped by Shipp. Prater also gave
Ellis a statement in which she stated that Shipp had shot Landreth. Still later, Ellis received a report
that Shipp was at Terrell State Hospital wanting to turn himself in or check himself in. Ellis asked
Terrell police to hold Shipp until Ellis could get there. Ellis went to Terrell, arrested Shipp, and
transported him back to Athens, where--a few hours later--Shipp was taken before Sanford, who
read him his rights before a statement was taken from him.

 We conclude that a reasonable officer in Ellis' position (7) would have probable cause to
determine Shipp had committed an offense, such that a warrant was not required for his arrest. See
Beverly, 792 S.W.2d at 104-05. Thus, based on the totality of the circumstances in this case, the
trial court was justified in finding that the arrest was legal. (8) 

 Because the arrest was legal, Shipp's voluntary confession was validly admitted as the fruit
of a legal arrest. Accordingly, we find that the trial court did not abuse its discretion in failing to
suppress the confession.

 We affirm the judgment of the trial court.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: December 3, 2009

Date Decided: December 15, 2009


Do Not Publish
1. The Texas Court of Criminal Appeals granted an out-of-time appeal in this case from the
1994 Â judgment Â such Â that Â we Â may Â address Â the Â merits Â of Â this Â appeal. Â See Â Ex Â parte Â Shipp, No.
AP-76,061, 2008 WL 5245337 (Tex. Crim. App. Dec. 17, 2008) (not designated for publication).
2. This case was transferred to this Court from the Twelfth District Court of Appeals in Tyler
as Â part Â of Â the Â Texas Â Supreme Â Court's Â docket Â equalization Â program. Â See Â Tex. Â Gov't Â Code
Ann. § 73.001 (Vernon 2005). We are not aware of any conflict between the precedent of the Tyler
court and the precedent of this Court on any issue relevant in this appeal. See Tex. R. App. P. 41.3.
3. Shipp was convicted of the offense of murder and received life imprisonment in the Texas
Department of Criminal Justice--Institutional Division. 
4. Miranda v. Arizona, 384 U.S. 436 (1966).
5. It appeared that Shipp also had warrants outstanding from other counties at the time of
arraignment. 
6. There is no indication Shipp was free to leave the police department.
7. While we find no indication that Ellis knew the following information at the time he arrested
Shipp, Clem also gave a statement putting the murder weapon in Shipp's hand. Since Prater drove
Shipp's truck to the Athens Police Department after her escape and told them of the circumstances
and of Shipp's actions, officers there had retrieved from Shipp's truck the "short barrel shotgun
believed to be the weapon used in the shooting." 
8. Also, Article 14.03(a)(1) of the Texas Code of Criminal Procedure authorizes a warrantless
arrest of persons found in suspicious places and under circumstances which reasonably show that
such persons have been guilty of some felony. This article requires "the functional equivalent of
probable cause to believe that a particular person has committed a felony." Johnson v. State, 722
S.W.2d 417, 421 (Tex. Crim. App. 1986), overruled in part on other grounds by McKenna v. State,
780 S.W.2d 797 (Tex. Crim. App. 1989); see Tex. Code Crim. Proc. Ann. art. 14.03 (Vernon
Supp. 2009). Again, Shipp was found at "Terrell State Hospital [and] wanted to turn himself in."
Hospitals have been found to be suspicious places by Texas courts. Dyar v. State, 125 S.W.3d 460,
468 (Tex. Crim. App. 2003). The fact that Shipp was found in a hospital, coupled with his
reportedly wanting to turn himself in, and the remaining circumstances, could also have given Ellis
probable cause that Shipp was guilty of a felony such that the warrant exception applied to the
Terrell Police Department's arrest.